## Case No. 13,478.

STOKES et al. v. FINDLAY et al.

[4 McCrary, 205.] [1]

Circuit Court, D. Iowa. 1879.

BANK—IMPERFECT ORGANIZATION—STOCKHOLDERS
—LIABILITY AS COPARTNERS.

1. The Bloomfield Bank was organized and commenced business without paid-up capital, without a sworn statement of its paid-up capital to the state auditor, and without any certificate from the state auditor authorizing the association to commence business—all these things being required by statute. Code Iowa, § 1576. *Held*, construing said section with other provisions of the statutes of Iowa, that, notwithstanding these failures, there was an imperfect organization, and it was not the case of no corporation in which the incorporators would be liable to creditors as partners.

2. If a corporation proceeds to exercise its powers without the performance of the required conditions, it proceeds irregularly, and both the corporation and its individual members may be subjected to the penalties and liabilities prescribed by law; but it does not follow that the corporation, by reason of its delinquency in this regard, loses or forfeits ipso facto its corporate existence.

3. Under the statutes of Iowa, a corporation for pecuniary profit becomes a body corporate as soon as the articles of incorporation are filed in the office of the recorder of deeds.

In equity

LOVE, District Judge. This is a proceeding the purpose of which is to put the stockholders of the Bloomfield Bank into bankruptcy. The very ground of this proceeding is that the so-called Bloomfield Bank was in fact and in law no corporation at all; that the essential steps required by the law of Iowa to make it a corporation were not pursued; that these preliminary steps or requisites are in the nature of conditions precedent to the organization of a banking corporation; that the statute requiring the prerequisites in question is in its terms, and in the very nature of the case, mandatory, not merely directory, and that the defendants, having neglected to perform the preliminary and precedent conditions, failed to organize themselves into a corporation, but became and were an association in the nature of a private partnership for the purpose of carrying on the business of banking.

The very able and ingenious counsel for the petitioning creditors admit that the true question is whether or not the Bloomfield Bank was in fact and law a corporation. If it was a corporation, this proceeding against the stockholders as mere partners cannot be maintained; but the counsel contend that there was a total failure to organize a corporation according to the law of Iowa. They also concede that if there was a corporation, though ever so defective, these defendants may take shelter under it from the present proceeding; but the counsel insist that the

1 [Reported by Hon. Geo. W. McCrary, Circuit Judge, and here reprinted by permission.]

question is not one of defective organization, since there was no organization at all under the law. It will be seen at a glance that if this view of the law be sound, it may be followed by most serious consequences, not only to the present defendants, but possibly to many other stockholders in corporations, standing in a like predicament, since it involves them in personal and individual responsibility for the debts of the association to which they belong, irrespective of any imputation of fraud or misconduct on their part.

It being conceded by the defendants, for the purpose of this decision at least, that the Bloomfield Bank commenced business without paid-up capital, without a sworn statement of its paid-up capital to the state auditor, and without any certificate from the state auditor authorizing the association to commence business, the counsel for the petitioners place their denial of its existence as a corporation mainly upon section 1576 of the Code, which is in these words: "No association shall be organized under the provisions of this chapter with a less amount of paid-up capital than $50,000, except in cities or towns having a population not exceeding three thousand, where such association may be organized with a paid-up capital of not less than $25,000. But no association shall have the right to commence business unless its officers elect or its stockholders shall have furnished to the auditor of state a sworn statement of the paid-up capital, and when the auditor is satisfied as to the fact, he shall issue to such association a certificate authorizing such association to commence business, a copy of which shall be published as provided in section 1571." This section must undoubtedly be construed in connection with the provisions of chapter 1, tit. 9, of the Code, providing for the organization of corporations for pecuniary profit; but, standing alone, will it bear the construction which the counsel seek to put upon it? True, it says that no association shall be organized under the provisions of this chapter with a less amount of paid-up capital than $50,000, etc.; but these words cannot be taken, as claimed by counsel, in their literal sense, for a moment's thought will make it apparent that the very terms of the section necessarily imply the existence of a corporation, already organized. These words require what? A paid-up capital. And how could the capital be paid up without a previously organized corporation? To whom would the subscriber of stock pay his money, and from whom receive his certificate of stock, if no corporate body existed, with the proper officers duly elected and authorized to receive payment and issue the certificates of stock? But this interpretation of the section is placed beyond question by the words which immediately follow: "But no association shall have the right to commence business until its officers elect or its stockholders shall have

furnished to the auditor of state a sworn statement of its paid-up capital," etc.

Now the duty here enjoined is to be performed by whom? By the officers elect or stockholders; and how could there be stockholders and officers elect without an organized corporation? These terms clearly and necessarily imply the existence of a corporation competent to issue stock to stockholders and to elect officers. It is evident, therefore, that we must seek some interpretation of the words "no association shall be organized," etc., which will bring them into harmony with the implied fact of an existing corporation. Undoubtedly, the true intention of the legislature was to provide that there should be no complete or perfect organization without the paid-up capital, the sworn statement and the certificate of the auditor; that is, that there should be no organization of a corporation which would authorize them to proceed with the ultimate business of the association without the prerequisites in question; without these prerequisites there would necessarily be an organization and a corporation, but it would be a defective organization. It would, therefore, be not the case of no organization, as counsel contend, but one of an imperfect organization. Hence the section further provides that "no association shall have the right to commence business until its officers elect or stockholders shall have performed the acts required of them." Here it will be perceived that the legal consequence annexed by the law to the failure to pay up the stock, make the sworn statement, and procure the certificate, is not that there shall be no organization or corporate existence, but that the association shall not commence business; that is, it shall not receive deposits, discount paper, issue circulation, etc. In this clause the true distinction appears between the existence of a corporation and the right to exercise its powers. Its existence depends upon the fact of its organization; the right to exercise its powers may depend upon the performance of prescribed conditions. The former may clearly exist without the latter. It is by confounding this distinction that counsel have, in my judgment, been led into error in the exceedingly ingenious oral argument addressed to the court. It is by no means to be implied that because the law forbids an association to commence business or exercise its legitimate powers without the performance of certain conditions, it is thereby intended to deny its corporate existence as a consequence of the nonperformance of the conditions. If the corporation proceeds to exercise its powers without the performance of the required conditions, it proceeds irregularly, and both the corporation and its individual members may be subjected to the penalties and liabilities prescribed by law; but it by no means follows that the corporation, by reason of its delinquency in this regard, loses or forfeits

ipso facto its corporate existence. The distinction just referred to will be made quite apparent by reference to the general law of Iowa contained in chapter 1, tit. 11, of the Code, providing for the organizations of corporations; chapter 9, tit. 11, which makes certain provisions in relation to banks organized under the laws of Iowa, and among them the provisions contained in section 1576, just considered, makes no provision whatever for the organization of banking corporations. Banking corporations, like all other corporations for pecuniary profit, are to be organized under the general law contained in chapter 1, tit. 9. Some conditions are annexed in chapter 9, tit. 11, upon which banking corporations may commence and do business, but we must look back to the general law to ascertain by what means these corporations may be formed, and upon what conditions their organization gives them corporate existence.

Now, if the question vital to the decision of the matter before me is, at what time, and on what conditions, does an association for pecuniary profit become a corporation under the general law of Iowa, this is by no means difficult to decide. Section 1058 provides that any number of persons may associate themselves and become incorporated for the transaction of any lawful business, etc.; and section 1060 provides that before commencing any business, except that of their own organization, they must adopt articles of incorporation, which must be recorded in the office of the recorder of deeds of the county where the principal place of business is to be, etc. And section 1064 enacts that the "corporation may commence business as soon as the articles are filed in the office of the recorder of deeds, and their doings shall be valid if the publication in a newspaper is made, and a copy filed in the office of the secretary of state, within three months from such filing in the recorder's office." At what point of time, then, does the association become a body corporate? Clearly as soon as the articles are filed in the office of the recorder of deeds; for at that moment the corporation may commence business, and it would be simply absurd to say that it might commence business as a corporation, and yet not be incorporate. It is the adoption of the articles of incorporation, and the filing of them with the recorder of deeds, that creates the corporation, for then it may commence business. Here, again, the distinction broadly appears between the existence and the doings of the corporation, between its organization and its acts. Its organization, though not entirely perfect, is sufficient when its articles are filed to constitute it a corporation, for then it may commence business; but in order to make its organization perfect, and thus render its "doings" valid as to all the world, the requisite notice must be governed by publication and by the filing with the secretary of state. The statute does not pro-

vide that the corporation itself shall become invalid in consequence of the failure to publisn the notice and file with the secretary, but only that its doings shall be thus invalidated; nor is what I here say at all inconsistent with what I have said in commenting on the terms of section 1576. Section 1064 provides that the corporation may commence business as soon as the articles are filed in the office of the recorder of deeds. This is affirmative, and necessarily and in terms implies the existence of a corporation upon the filing of the articles.

The provision in section 1576, that no banking association shall have the right to commence business until its officers or stockholders shall have furnished the state auditor with a sworn statement of paid-up capital, etc., is negative, and it does not imply that no corporation shall exist till that act is done. The very terms, indeed, as I have shown, imply the existence of a corporation whose officers or stockholders shall do the required act, and it only postponed the right of the corporate body to embark in its ulterior business of accepting deposits, loaning, discounting and issuing paper until the corporate body itself or its members shall make the sworn statement of paid-up capital and have obtained the auditor's certificate. That the corporation itself is not invalidated, much less extinguished, by the failure to publish the notice and file with the secretary of state, or even by a failure to pursue substantially the steps required in its organization without some proper proceedings to forfeit its charter, clearly appears by section 1068. "A failure to comply substantially with the foregoing requisitions in relation to organization and publicity renders the individual property of the stockholders liable for the corporate debts." Thus we see the distinction is clearly made between "organization" and "publicity," and doubtless the publication of notice and filing with the secretary appertain to the "publicity" rather than the "organization" of the body corporate. And what are the consequences which, by the terms of the statute, result from the failure to comply substantially with the foregoing requisitions? Does the corporation thereby have no existence or cease to exist? Does it follow from the failure that no corporation has been formed and that none in fact exists? Certainly not! for the statute evidently contemplates the continued existence of the corporation; else why does it provide that the stockholders' property shall be liable for the corporate debts? If no corporation had been formed there could be no corporate debts; for, if no corporation had been formed, the stockholders would be mere partners, according to the theory of plaintiff's counsel, and the debts would be partnership debts. If it had been the intention of the legislature to provide that a failure to comply with the provisions of the law respecting organization and publicity should result in making the stockholders mere partners, it would have been absurd to provide that the individual property of the stockholders should be liable for the debts, since that would have been the result of the partnership without any such provision; but it is argued that a construction which recognizes the existence of a banking corporation without paid-up capital, as required by section 1576, cannot be correct, because it would be fatal to the ends of justice. The prepayment of the capital is the most essential condition of a banking corporation. It is the security of the public against fraud and loss. It is made the express duty of the "officers and stockholders" to make a sworn statement to the auditor of its paid-up capital, etc. Can they be permitted to acquire the privileges and immunities of a corporation without a compliance with the essential conditions of the law from which they derive their creation? Can any set of men be permitted to engage in the business of banking without a dollar of paid-up capital, and advertise themselves to the world, falsely, as having a certain paid-up capital, all in flagrant violation of the very law of their existence as a corporation, and yet claim exemption from personal responsibility for their debts and frauds by pleading the immunities of the very law which they have infringed? Such a doctrine, it is contended, would not only give immunity to fraud in this particular case, but it would encourage the commission of fraud in other cases.

This argument was urged with great subtlety and force by counsel, but I think the answer to it is both obvious and conclusive. That answer is that the consequences apprehended by counsel do by no means flow from the recognition of the bank as a corporation. It is true that by holding the association to be a corporation we preclude the liability of the members as mere partners, but it does not by any means follow that they are hence exempted from personal and individual liability for their alleged debts and frauds. In the first place, if the bank shall be adjudicated a bankrupt as a corporation, the assignee may compel all delinquent stockholders to pay up their unpaid stock. In the second place, I can see no reason why the assignee may not, by bill in equity or otherwise, make all stockholders who participated knowingly in the fraudulent organization or operations of the bank personally liable for all damages resulting to creditors from their fraudulent conduct. This could, in my judgment, be done upon the clearest principles of law and equity, irrespective of any statute; but there are sections of the statute providing in express terms for the protection of creditors in this regard.

Section 1071 provides that "intentional fraud in failing to comply substantially with the articles of incorporation, or in deceiving the public or individuals in relation to their means or liabilities, shall subject those guilty

thereof to fine and imprisonment, or both, at the discretion of the court. Any person who has sustained injury from said fraud may also recover damages therefor against those guilty of participating in such fraud." And section 1072 provides that the payment of dividends which leave insufficient funds to meet the liabilities of the corporation shall be deemed such frauds as will subject those therein concerned to the penalties of the preceding section, etc. See, also, sections 1573 and 1574. Thus it appears that creditors are provided with ample remedies without denying the existence of the corporation, and by consequence subjecting the stockholders to liability as partners; and the remedies referred to are such as to enable the court to distinguish between innocent and guilty stockholders. There may be stockholders who in good faith paid up their stock, and who did not in any way participate in the original organization of the bank, and certainly it would be most unjust to involve them in the common ruin by confounding them with those who never paid a cent upon their stock, and knowingly participated in deceiving the public and defrauding creditors. If, on the contrary, the stockholders be made liable as partners, the honest man who in good faith paid up his stock to the last dollar without any knowledge whatever of any purpose to evade the law, will be made personally liable for the entire debts of the bank in common with the stockholder or bank officer who paid not a cent upon his stock and knowingly aided in evading the law. This certainly would be a most unjust, not to say deplorable result.

It is apparent that the redress which the court proposes here to give the creditors is precisely consistent with the contract between the creditors and the bank, and the intention of all parties to that contract. The creditors did not deal with the Bloomfield Bank as a mere copartnership, nor did they trust the members of the corporation as such. The creditors intended to give and did give them credit as an organized corporation. They did not rely in crediting the bank upon the individual and personal responsibility of the stockholders, and now to make the stockholders individually and personally responsible as partners, would result in giving the creditors what they did not expect or contract for. What the creditors did contract for, and what they did have a perfect right to demand, was that the capital should have been paid up by the stockholders according to law, and that there should have been good faith in the organization and operation of the bank; and precisely to this extent I propose to give the creditors redress.

The stockholders will, in my view, be compelled to repair the injury done to the creditors, by paying up their stock in full, and by making them compensation in damages for the consequences of their bad faith in failing to pay up their stock before the commencement of business. As the creditors did not intend to deal with the bank as a private partnership, so it is manifest that the stockholders did not intend to bind themselves to the creditors as copartners, and it would seem to be an extraordinary and illogical proceeding which should enforce a contract contrary to the intent and meaning of both contracting parties.